Bryan M. Haynes (*pro hac vice* application in process)
**TROUTMAN SANDERS LLP**
1001 Haxall Point
P.O. Box 1122 (23218)
Richmond, Virginia 23219
Phone:       804.697.1420
Facsimile:   804.698.6042
Bryan.Haynes@troutmansanders.com

Natu J. Patel, SBN 188618
**THE PATEL LAW FIRM, P.C.**
22952 Mill Creek Drive
Laguna Hills, California 92653
Phone:       949.955.1077
Facsimile:   949.955.1877
NPatel@thePatelLawFirm.com

Attorneys for Plaintiff,
Starbuzz Tobacco, Inc.,
a California corporation

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARBUZZ TOBACCO, INC., a California corporation, | ) Case No.: |
| | ) |
| | ) |
| Plaintiff, | ) **COMPLAINT** |
| | ) |
| vs. | ) |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Defendant. | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |
| | ) |

PLAINTIFF, Starbuzz Tobacco, Inc. ("Starbuzz" or "Plaintiff") alleges as follows:

## **INTRODUCTION**

1.     Starbuzz brings this action pursuant to 26 U.S.C. § 7429, which provides a mechanism for taxpayers to challenge so-called "jeopardy" assessments of tobacco products excise taxes, and related levies of property, issued by the Alcohol and Tobacco Tax and Trade Bureau of the United States Department of the Treasury ("TTB").

2.     Due to the extraordinary nature of jeopardy assessments and levies (in which taxpayers are not afforded the typical notice and opportunity to address the government's claims), Congress provided for expedited judicial review.  Pursuant to 26 U.S.C. § 7429(b)(3), the Court is obligated to resolve Starbuzz's claims within 20 days, absent an agreed extension.

3.     TTB made the assessment at issue based on an alleged discrepancy between Starbuzz's imports of pipe tobacco and the tax-paid tobacco removed from Starbuzz's factory for domestic consumption.  Had Starbuzz been given the usual opportunity to address TTB's claims, Starbuzz would have promptly resolved the issue by showing that the discrepancy was caused by Starbuzz's exports, which are exempt from federal excise taxes.

4.     Starbuzz was not given the usual opportunity to address these claims because TTB determined that Starbuzz's payment of the disputed taxes was in jeopardy.  This determination was based on allegations that Starbuzz is attempting to shield its assets from creditors and that Starbuzz may be filing for bankruptcy protection.  Although TTB has thus far refused to disclose the source or any evidence for these allegations, they are categorically wrong.  Starbuzz is a vital and expanding business.

## PARTIES

5.     Plaintiff, Starbuzz Tobacco, Inc. is a California corporation, with its principal place of business in the City of Garden Grove, Orange County, California.  Starbuzz is a federally-permitted manufacturer of tobacco products. Starbuzz distributes tobacco products throughout the United States and in several countries.

6.     Defendant is the United States of America.

## JURISDICTION AND VENUE

7.     This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1346(a)(1) and 26 U.S.C. § 7429(b).

8.     Venue is proper under 26 U.S.C. § 7429(e) and 28 U.S.C. § 1402(a) because Starbuzz's principal place of business is located in this district.

# FACTS

## Legal Standards for Imposition of Federal Tobacco Products Excise Taxes

9.     Manufacturers and importers of tobacco products are responsible for paying federal excise taxes on the products they manufacture and sell in the United States.  The federal excise tax for pipe tobacco is $2.8311 per pound.  26 U.S.C. § 5701(f).

10.     Federal excise taxes are determined upon "removal," defined as the time that tobacco products are removed from the manufacturer's factory or from internal revenue bond.  26 U.S.C. §§ 5703(b), 5702(j).

11.     Importantly, however, a manufacturer can export tobacco products to a foreign country without payment of federal excise taxes.  26 U.S.C. § 5704(b).

## Legal Standards for TTB Assessments and Levies

12.     TTB is the federal bureau responsible for collecting federal excise taxes on tobacco products.  TTB's authority includes the ability to issue assessments and to make levies for allegedly unpaid taxes.  The taxpayer is normally afforded a reasonable period of time to contest assessments.  26 U.S.C. § 5703(d).

13.     However, pursuant to 26 U.S.C. §§ 6862 and 6331, TTB may in limited circumstances issue "jeopardy" assessments and levies for allegedly unpaid taxes.  The jeopardy determination, which is based on a finding that collection of

Case 8:15-cv-00505-JLS-DFM   Document 1   Filed 04/01/15   Page 5 of 15   Page ID #:5

the taxes will be jeopardized by any delay in assessment or levy, allows the government to begin collecting the disputed taxes before the taxpayer has an opportunity to contest the government's claims.

14.     Under TTB's regulations at 27 C.F.R. § 70.75, TTB's jeopardy determination must be based on one of the following circumstances:  (a) the taxpayer is or appears to be planning quickly to depart from the United States or to conceal itself; (b) the taxpayer is or appears to be placing property beyond the reach of the government; or (c) the taxpayer's financial solvency is or appears to be threatened.

15.     Within five days of a jeopardy determination, TTB "shall provide the taxpayer with a written statement of the information upon which [TTB] relied in making such assessment or levy."  26 U.S.C. § 7429(a)(1)(B).

16.     Within 30 days after the written statement required by § 7429(a)(1)(B), the taxpayer may request a TTB administrative review of the jeopardy determination.

17.     As soon as 16 days after requesting the administrative review, the taxpayer may bring a civil action challenging the jeopardy determination.  26 U.S.C. § 7429(b).  In such a proceeding, TTB bears the burden of proving the reasonableness of the assessment or levy, and the court's review of TTB's determination is *de novo*.

-5-
Complaint

18.     The court has 20 days to decide whether TTB's jeopardy determination was reasonable.  26 U.S.C. § 7429(b)(3).  This time period may be extended at the taxpayer's request.  26 U.S.C. § 7429(c).

19.     Pursuant to 26 U.S.C. § 7429(g), TTB bears the burden of proving that the assessment, levy and jeopardy determination were "reasonable under the circumstances."

## **Procedural History**

20.     Starbuzz has been a TTB-licensed manufacturer of tobacco products since 2005.

21.     Starbuzz had no knowledge of any significant issues regarding its reporting and payment of federal tobacco products excise taxes until receiving TTB's January 22, 2015 "Immediate Notice & Demand of Taxes Due – Notice of Intent to Levy" ("the Notice and Demand").  Although Starbuzz had been the subject of a TTB audit in 2010 and had thereafter corresponded with TTB auditors regarding routine paperwork corrections, Starbuzz was not advised of any major issues.

22.     The Notice and Demand asserted that, during the period from January 1, 2012 through June 30, 2014, Starbuzz underreported its removals of pipe tobacco by 925,823.93 pounds.  The Notice and Demand reflected an assessment against Starbuzz in the amount of $3,523,176.47 based on the allegedly

underreported removals.

23.     The assessment was based on an apparent discrepancy between quantities of processed tobacco imported by Starbuzz and quantities of tobacco reported as manufactured by Starbuzz.  TTB evidently assumed that the difference was the result of underreported tobacco products removed for domestic consumption.  It does not appear that TTB considered whether the difference was the result of Starbuzz's exported tobacco products.

24.     The Notice and Demand also indicated that the collection of the alleged deficiency "has been declared in jeopardy pursuant to 26 U.S.C. § 6331(a) and 27 C.F.R. 70.161(a)(2)."  Absent immediate payment of the assessment, TTB threatened to take enforcement and collection action without further notice, including filing a federal tax lien, levying accounts and seizing of property.

25.     Immediately after receiving the Notice and Demand, Starbuzz (through counsel) contacted TTB to ascertain the basis for TTB's demand, and particularly the jeopardy determination.  Starbuzz did not receive a substantive response until February 5, 2015.  In the meantime, TTB levied Starbuzz's operating account at Wilshire Bank, resulting in a debit of $1,078,448.00 and emptying the account.  TTB has also levied and emptied an account at Wells Fargo bank.

26.     The levy had a severe impact on Starbuzz's ability to conduct business, including paying taxes, suppliers, and other creditors.  For example, Starbuzz's federal excise tax payment for January was issued from the levied account.  The levy similarly impacted Starbuzz's ability to pay state excise taxes that were due.  All of these business issues were compounded by the fact that Starbuzz had no understanding of the basis for the Notice and Demand or the jeopardy determination.

27.     By letter dated February 5, 2015, TTB purported to address the alleged basis for the jeopardy determination.  Although the letter contained allegations regarding Starbuzz's purported financial condition, the alleged sale of the business and alleged transfers of assets (all of which are categorically untrue), the letter did not disclose the source of these allegations or detail any evidence for these allegations.  Accordingly, during a call later that day with several TTB employees, Starbuzz inquired regarding the basis for these allegations.  TTB refused to provide any additional information.

28.     On February 27, 2015, Starbuzz obtained (at a substantial ongoing cost) an unconditional bond in the amount of $3,523,176.47 to cover the alleged tax liability.  In accordance with 27 C.F.R. § 70.76, Starbuzz's bond stayed further collection of TTB's assessment.  In accordance with 27 C.F.R. § 70.167 and a Bond Agreement between Starbuzz and TTB, the levied amounts are to be returned

to Starbuzz's accounts.  As of the date of the filing of this Complaint, the levied amounts have not been returned.

29.     By letter dated March 5, 2015, Starbuzz requested TTB's administrative review of the jeopardy assessment and levy, pursuant to 26 U.S.C. § 7429(a)(2) and 27 C.F.R. § 70.209.  As of the date of filing of this Complaint, TTB has not issued its determination.  Starbuzz has exhausted all necessary administrative remedies.

## Starbuzz Has Accounted for the Alleged Excise Tax Discrepancy

30.     Starbuzz believes that it has paid all federal excise taxes for tobacco products removed from its factory for sale in the United States.  Starbuzz has never attempted to evade federal excise taxes.

31.     Starbuzz believes that the apparent tax discrepancy is the result of a reporting oversight.  Specifically, Starbuzz did not report to TTB its tobacco product exports, which as noted above are exempt from federal excise taxes.  Although Starbuzz takes responsibility for this oversight, TTB's auditors presumably were aware of Starbuzz's exports.  Although TTB's auditors assisted Starbuzz with routine corrections to its tax reports, Starbuzz was not advised to report its exports until recently.

32.     As noted above, TTB audited Starbuzz in 2010.  During the audit period, Starbuzz exported tobacco.  TTB's investigators reviewed Starbuzz's

manufacturing records and excise tax returns, helped Starbuzz resolve minor discrepancies and assisted Starbuzz with correcting its manufacturing reports. However, Starbuzz was not advised to include exports on its manufacturing reports. Nor was Starbuzz ever informed of any significant discrepancies in its records or returns.

33.     After the audit, Starbuzz inquired regarding the status of its account, including whether "anything is missing or needs to be corrected or if any penalties are unpaid." TTB advised Starbuzz that "everything seems to be in order with the account."

34.     More recently, however, Starbuzz inquired about the proper way to document exports. In January 2015, for the first time, TTB advised Starbuzz regarding its export reporting requirements, stating that "it was an oversight that our field representative did not advise you of the requirements for reporting exports." Starbuzz was in the process of correcting its export reports and procedures when it received the Notice and Demand.

35.     From January 2012 through July 2014, Starbuzz exported 945,119.94 pounds of tobacco. TTB's Notice and Demand asserted a discrepancy of 925,823.93 pounds. Thus, Starbuzz's exports account for the discrepancy identified by TTB.

## There is No Basis for TTB's Jeopardy Determination

36.    As noted above, within five days of its determination, TTB was required to provide Starbuzz "with a written statement of the information upon which the [TTB] relied in making such assessment or levy."  26 U.S.C. § 7429(a)(1)(B).

37.    By letter dated February 5, 2015, TTB provided a written statement, but the statement did not detail the evidentiary basis for the allegations regarding Starbuzz's purported financial condition, the alleged sale of the business and alleged transfers of assets.  TTB merely alleged that Starbuzz's sole shareholder (misidentified in the letter as Wael Elhalwani) "was or appeared to be designing quickly to place Starbuzz's property beyond the reach of the Government" and that "Starbuzz intended to underreport its assets, in order to shield its assets from creditors."

38.    These conclusory allegations, without identifying the evidentiary basis, do not satisfy TTB's obligations under 26 U.S.C. § 7429(a)(1)(B) to fully inform the taxpayer of the reasons for the jeopardy determination and to give the taxpayer an opportunity to make a meaningful challenge.

39.    In any event, TTB's allegations regarding Starbuzz's financial condition are unfounded.  As an initial matter, Wael Elhalwani (identified in the February 5, 2015 letter as Starbuzz's "sole shareholder") is not a shareholder of

Starbuzz.  Salim Elhalwani (Wael's father) is Starbuzz's sole shareholder.  This fact is reflected on filings that have been submitted to TTB from the last several years.

40.     Starbuzz has not sold or transferred assets outside of the United States, other than sales of tobacco products and accessories in the ordinary course of business.  Mr. Elhalwani is not currently exploring the sale of Starbuzz.  Starbuzz has no intention of filing for bankruptcy protection.  Starbuzz is financially stable.

41.     Starbuzz's viability is evidenced by its recent and robust efforts to protect and expand its business.  Over the last several months, Starbuzz has engaged in a variety of business activities that belie any notion that Starbuzz is contemplating bankruptcy or is otherwise financially imperiled, that Mr. Elhalwani is exploring the sale of the business, or that Starbuzz is transferring assets outside of the United States.

42.     For example, in December 2014, Starbuzz signed a long-term lease for an additional warehouse to expand its business in the United States.  Starbuzz is in the process of finalizing agreements for exclusive distributorships of its products in Spain and the United Kingdom.  Starbuzz is in the process of introducing two new products, Vintage by Starbuzz and Buzzarillos cigarillos.  Starbuzz would not be doing any of these things if it were on the verge of bankruptcy.

43.     Starbuzz has aggressively enforced, and continues to aggressively enforce, its intellectual property rights.  In just the last few months, Starbuzz has filed three lawsuits in federal court to prevent companies from infringing Starbuzz's trademarks.  Starbuzz recently successfully concluded a lawsuit involving allegations of copyright infringement.  Starbuzz continues to prosecute and manage numerous trademarks in the United States and other countries.  Starbuzz is aggressively protecting its intellectual property rights throughout the world through registrations, prosecution and opposition proceedings, which investments belie any suggestion that Starbuzz is preparing to file for bankruptcy protection or is in financial jeopardy.

### CLAIM FOR RELIEF
### [Abatement of Assessment and Release of Levy
### Pursuant to 26 U.S.C. § 7429(b)]

44.     Starbuzz re-alleges and incorporates by this reference paragraphs 1 through 43, inclusive, of this Complaint as if fully set forth herein.

45.     Starbuzz has paid all required federal tobacco product excise taxes.

46.     Starbuzz has accounted for alleged discrepancy identified by TTB through records of its exports, which are not subject to tobacco products excise taxes.

47.     TTB's assessment was therefore unreasonable under the circumstances.

48.     Alternatively, the amount of TTB's assessment was not appropriate under the circumstances because Starbuzz's exports account for a substantial portion of the alleged discrepancy.

49.     Even if an assessment were otherwise proper, TTB's jeopardy determination and levy were not.

50.     Neither Starbuzz nor its owner are or appear to be planning to depart from the United States or to conceal themselves.

51.     Neither Starbuzz nor its owner or officers are or appear to be placing Starbuzz's property beyond the reach of the government.

52.     Starbuzz's financial solvency is not threatened.  Starbuzz is a viable and thriving business.

53.     TTB's jeopardy determination and levy were therefore unreasonable under the circumstances.

## **PRAYER FOR RELIEF**

WHEREFORE, Starbuzz requests entry of judgment in its favor and against the United States of America as follows:

1.     An order declaring that TTB's assessment against Starbuzz was unreasonable under the circumstances, and abating the assessment;

2.     An order declaring that the amount of TTB's assessment against Starbuzz was not appropriate under the circumstances, and abating the assessment;

3.      An order declaring that TTB's levies upon Starbuzz's assets were unreasonable under the circumstances, and directing TTB to release the levies and to return all money, property and things of value seized from Starbuzz;

4.      An order declaring that TTB's jeopardy assessment was unreasonable under the circumstances, and therefore invalid as a matter of law;

5.      An order, pursuant to 26 U.S.C. § 7430 and any other applicable authority, awarding Starbuzz its reasonable attorneys fees and costs incurred in connection with this proceeding and the administrative review of TTB's jeopardy assessment and levy, and Starbuzz's attorneys fees and costs incurred in connection with obtaining the bond necessary to forestall further TTB collection activities; and

6.      Any other or further relief that the Court deems appropriate, proper, and just.

DATED: April 1, 2015                          Respectfully Submitted,
                                              **TROUTMAN SANDERS LLP**
                                              Bryan M. Haynes
                                              (*pro hac vice* application in process)


                                              **THE PATEL LAW FIRM, P.C.**


                                              _____
                                              Natu J. Patel,
                                              Attorneys for Plaintiff
                                              Starbuzz Tobacco, Inc.